1  MORGAN, LEWIS & BOCKIUS LLP
   COLLIE F. JAMES, IV (SBN 192318)
2  cjames@morganlewis.com
   JARED S. KIRKWOOD (SBN 265647)
3  jkirkwood@morganlewis.com
   5 Park Plaza, Suite 1750
4  Irvine, CA  92614
   Tel:   949.399.7000
5  Fax:   949.399.7001

6  Attorneys for Defendants
   TEVA PHARMACEUTICALS USA, INC.,
7  AND CEPHALON, INC.

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11 | THE PEOPLE OF THE STATE OF
   | CALIFORNIA, acting by and through
12 | Santa Clara County Counsel Orry P. Korb     Case No. __cv 14-1080_____
   | and Orange County District Attorney Tony
13 | Rackauckas,

14 |              Plaintiffs,                     **DEFENDANT TEVA
   |                                             PHARMACEUTICALS USA,
15 |      vs.                                    INC.'S NOTICE OF REMOVAL**

16 | PURDUE PHARMA L.P., PURDUE
   | PHARMA, INC., THE PURDUE
17 | FREDERICK COMPANY, INC., TEVA              Initial Compl. Filed:  May 21, 2013
   | PHARMACEUTICAL INDUSTRIES,                 Trial Date:            None Set
18 | LTD., TEVA PHARMACEUTICALS,
   | INC., CEPHALON, INC., JOHNSON &
19 | JOHNSON, JANSSEN
   | PHARMACEUTICALS, INC., ORTHO-
20 | MCNEIL-JANSSEN
   | PHARMACEUTICALS, INC. n/k/a
21 | JANSSEN PHARMACEUTICALS, INC.;
   | JANSSEN PHARMACEUTICAL INC.
22 | n/k/a JANSSEN PHARMACEUTICALS,
   | INC., ENDO HEALTH SOLUTIONS
23 | INC., ENDO PHARMACEUTICALS,
   | INC., ACTAVIS, PLC, ACTAVIS, INC.,
24 | WATSON PHARMACEUTICALS, INC.
   | n/k/a ACTAVIS, INC., WATSON
25 | LABORATORIES, INC., ACTAVIS
   | LLC, ACTAVIS PHARMA, INC. f/k/a
26 | WATSON PHARMA, INC., and DOES 1
   | THROUGH 100, INCLUSIVE,

27

28 |              Defendants.

# TABLE OF CONTENTS

**Page**

A.    The State Court Action .......................................................................... 1

B.    Venue And Jurisdiction ....................................................................... 2

    1. The Amount In Controversy Exceeds $75,000 ............................. 2

    2. There Is Complete Diversity Of Citizenship ................................ 5

C.    None Of The Defendants Is A Citizen Of California ........................ 5

D.    The Plaintiffs Are Citizens Of California ......................................... 9

E.    Reliance On Cases That Do Not Follow Lucent Is Misplaced .................. 15

F.    Removal Is Timely ............................................................................ 18

G.    Consent .............................................................................................. 18

H.    Service ............................................................................................... 19

I.    Conclusion ........................................................................................ 19

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Cal. v. M&P Invs.*,
213 F. Supp. 2d 1208 (E.D. Cal. 2002) ............................................................. 12

*Cal. v. N. Trust Corp.*,
No. CV 12-01813, 2013 U.S. Dist. LEXIS 53155
(C.D. Cal. Apr. 10, 2013) ............................................................. 12, 15

*Cal. v. Universal Syndications, Inc.*,
No. C 09-1186, 2009 U.S. Dist. LEXIS 64066
(N.D. Cal. June 16, 2009) ............................................................. 5, 12, 16

*Cal. v. Smartwear Techs.*,
No. 11cv01361, 2012 U.S. Dist. LEXIS 8342
(S.D. Cal. Jan. 25, 2012) ............................................................. 16

*Cal. v. Steelcase Inc.*,
792 F. Supp. 84 (C.D. Cal. 1992) ............................................................. 17

*Cal. v. Time Warner, Inc.*,
No. CV 08-4446, 2008 U.S. Dist. LEXIS 109387
(C.D. Cal. Sept. 17, 2008) ............................................................. 16

*Carden v. Arkoma Assocs.*,
494 U.S. 185 (1990) ............................................................. 5

*Chabner v. United of Omaha Life Ins. Co.*,
225 F.3d 1042 (9th Cir. 2000) ............................................................. 4

*City of Oakland v. Brock*,
8 Cal. 2d 639 (1937) ............................................................. 13

*Cnty. of Santa Clara v. Atl. Richfield Co.*,
137 Cal. App. 4th 292 (2006) ............................................................. 12, 13

*Cnty. of Santa Clara v. Bristol Myers Squibb Co.*,
No. 5:12-cv-03256, 2012 U.S. Dist. LEXIS 133405
(N.D. Cal. Sept. 17, 2012) ............................................................. 15

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

NOTICE OF REMOVAL

*Dep't of Fair Empl. & Hous. v. Lucent Techs., Inc.*,
  642 F.3d 728 (9th Cir. 2011) ........................................................................ passim

*Destfino v. Reiswig*,
  630 F.3d 952 (9th Cir. 2011) ..................................................................................... 18

*Eagle v. Am. Tel. & Tel. Co.*,
  769 F.2d 541 (9th Cir. 1985) ....................................................................................... 2

*Galt G.S. v. JSS Scandinavia*,
  142 F.3d 1150 (9th Cir. 1998) ..................................................................................... 4

*Guglielmino v. McKee Foods Corp.*,
  506 F.3d 696 (9th Cir. 2007) ....................................................................................... 3

*Hunt v. Wash. State Apple Adver. Commc'n*,
  432 U.S. 333 (1977) ..................................................................................................... 5

*Johnson v. Columbia Props. Anchorage, LP*,
  437 F.3d 894 (9th Cir. 2006) ....................................................................................... 6

*Kasky v. Nike, Inc.*,
  27 Cal. 4th 939 (Cal. 2002) ....................................................................................... 11

*Lewis v. Verizon Commc'ns, Inc.*,
  627 F.3d 395 (9th Cir. 2010) ....................................................................................... 3

*Mo., Kan. & Tex. Ry. Co. v. Mo. Ry & Warehouse Comm'rs*,
  183 U.S. 53 (1901) ..................................................................................................... 10

*Moor v. Cnty. of Alameda*,
  411 U.S. 693 (1973) ................................................................................................... 10

*Nev. v. Bank of Am. Corp.*,
  672 F.3d 661 (9th Cir. 2012) ................................................................................. 9, 10

*Nw. Pub. Commc'n ex rel. Or. v. Qwest Corp.*,
  877 F. Supp. 2d 1004 (D. Or. 2012) ......................................................................... 11

*People v. Brophy*,
  49 Cal. App. 2d 15 (1942) ......................................................................................... 13

*People v. City of Los Angeles*,
  160 Cal. App. 2d 494 (1958) ..................................................................................... 13

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

iii

*Proctor v. Vishay Intertechnology Inc.*,
  584 F.3d 1208 (9th Cir. 2009) ........................................................ 18

*Salveson v. Western States Bankcard Ass'n*,
  731 F.2d 1423 (9th Cir. 1984) ........................................................ 18

*Sanchez v. Monumental Life Ins. Co.*,
  102 F.3d 398 (9th Cir. 1996) ........................................................... 3

*Singh v. Super. Ct.*,
  44 Cal. App. 64 (1919) .................................................................... 13

*Smith v. Sperling*,
  354 U.S. 91 (1957) ............................................................................ 5

*W. Va. v. Morgan Stanley & Co.*,
  747 F. Supp. 332 (S.D. W.Va. 1990) ............................................ 17

*Wis. v. Abbott Labs.*,
  341 F. Supp. 2d 1057 (W.D. Wis. 2004) ....................................... 17

STATUTES

28 U.S.C. § 84 ........................................................................................ 2

28 U.S.C. § 1332 .............................................................................. passim

28 U.S.C. § 1441 ............................................................................ 1, 2, 18

28 U.S.C. § 1446 ...................................................................... 1, 2, 18, 19

Cal. Bus. & Prof. Code § 17200 .......................................................... 2

Cal. Bus. & Prof. Code § 17203 ........................................................ 12

Cal. Bus. & Prof. Code § 17204 ........................................................ 10

Cal. Bus. & Prof. Code § 17206 ........................................... 10, 11, 17

Cal. Bus. & Prof. Code § 17500 .......................................................... 2

Cal. Bus. & Prof. Code § 17535 ........................................................ 10

Cal. Bus. & Prof. Code § 17536 .................................................. 10, 11

Cal. Civ. Code § 3345 ............................................................................ 4

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

Cal. Civ. Code § 3479.............................................................................................2

Cal. Civ. Proc. Code § 731 ..............................................................................10, 12

Cal. Gov't Code § 27642 ....................................................................................13

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant Teva Pharmaceuticals USA, Inc. ("Teva USA") hereby gives notice of removal of this action titled *People of the State of California v. Purdue Pharma L.P., et al.*, bearing civil action No. 30-2014-00725287 from the Superior Court of California, County of Orange, to the United States District Court for the Central District of California. In support of the Notice of Removal, Teva USA states as follows:

A.   **The State Court Action**

1.   An action was commenced on May 21, 2014 by county counsel for Santa Clara County and the district attorney for Orange County in the Orange County Superior Court ("State Court Action").  A copy of the Complaint is attached as Exhibit 1.

2.   The Complaint was amended on June 7, 2014.  A copy of the Amended Complaint is attached as Exhibit 2.

3.   In the Amended Complaint, Santa Clara County Counsel Orry P. Korb and Orange County District Attorney Tony Rackauckas ("Plaintiffs") have sued more than fifteen separate pharmaceutical manufacturers ("Defendants") who allegedly manufacture and sell various prescription opioid medicines.  (Am. Compl. ¶¶ 26-35).  Plaintiffs allege that these pharmaceutical manufacturers misled and deceived the FDA, the medical community, and consumers about the benefits and risks associated with the use of opioid analgesic pharmaceutical products.  Plaintiffs contend that Defendants' alleged misconduct was directed at "doctors, pharmaceutics, payers, and patients in Santa Clara and Orange Counties," through sales representatives, speaker programs, educational programs, marketing materials, medical education courses, patient advocacy groups, and professional societies. (*Id.* ¶¶ 6, 21, 41-42, 112; *see also id.* ¶¶ 36-250).  Plaintiffs further contend that as a result of this alleged misconduct, these medicines have been unnecessarily and

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

1

improperly prescribed, which, in turn, "has affected and continues to affect a considerable number of people within the Counties . . . ."  (*Id.* ¶ 299).

4.  Based upon these allegations, Plaintiffs assert three counts in the Amended Complaint:  (a) Count I asserts a claim under California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*; (b) Count II asserts a claim under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*; and (c) Count III asserts a claim under California's public nuisance statute, Cal. Civ. Code § 3479.  (*Id.* ¶¶ 264-301).  Plaintiffs seek civil penalties, restitution, injunctive relief, treble the relief awarded, and litigation costs and attorneys' fees.  (*Id.* ¶¶ 302-316).

5.  Teva USA was first named as a defendant in the Amended Complaint, and was served with a copy of the Summons and Amended Complaint on June 16, 2014.  Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders that have been served on Teva USA are being filed with and are attached to this Notice of Removal as Composite Exhibit 3.  (*See* Declaration of Jared S. Kirkwood ¶¶ 2-3).

**B.    Venue And Jurisdiction**

6.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 84(c)(3), 1441(a), and 1446(a) because the Orange County Superior Court, where the State Court Action was filed and has been pending prior to removal, is a state court within this federal district and division.

7.  Subject matter jurisdiction is appropriate in this Court because complete diversity jurisdiction exists under 28 U.S.C. § 1332(a).  Diversity jurisdiction exists pursuant to 28 U.S.C. § 1332(a) because: (a) the amount in controversy exceeds $75,000, exclusive of interest and costs; and (b) all Defendants are citizens of different States than all Plaintiffs who are the real parties in interest.

### 1.     The Amount In Controversy Exceeds $75,000.

8.     It is well-settled that the "the amount in controversy is determined from the pleadings as they exist at the time a petition for removal is filed." *Eagle v. Am. Tel. & Tel. Co.*, 769 F.2d 541, 545 (9th Cir. 1985).  Removal is proper so long as it is "more likely than not" that the amount in controversy exceeds $75,000. *Sanchez v. Monumental Life Ins. Co*., 102 F.3d 398, 404 (9th Cir. 1996); *see also Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 397 (9th Cir. 2010); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699-700 (9th Cir. 2007).  "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability."  *Lewis*, 627 F.3d at 400.  "To establish the jurisdictional amount, [Defendants] need not concede liability for the entire amount" alleged to be at issue. *Id.*  The jurisdictional minimum is established if "[t]he Plaintiff is seeking recovery ***from a pot*** that Defendant has shown could exceed" the minimum, "and the Plaintiff has neither acknowledged nor sought to establish that the . . . recovery is potentially any less."  *Id.* at 401 (emphasis added).

9.     Plaintiffs' claims against each defendant exceed $75,000, exclusive of interest and costs.

10.     Plaintiffs assert three separate claims against each defendant and seek, among other things, civil penalties, restitution, and attorneys' fees against each defendant.  (Am. Compl. ¶¶ 302-316).

11.     Plaintiffs' request for civil penalties alone satisfies the amount in controversy.  For instance, Plaintiffs seek civil penalties up to $2,500 for each alleged "act of false and misleading advertising."  (*Id.* ¶¶ 288, 277, 305, 309).  If more than 30 such acts are alleged to have been committed by a defendant, the $75,000 threshold is met.  While Plaintiffs have not identified any specific acts of false or misleading advertising, Plaintiffs' broad and conclusory allegations make clear that they are asserting more than 30 acts of "false and misleading advertising" against each defendant; indeed, Plaintiffs allege in conclusory fashion that "[*f*]*or*

*years*, Defendants ***systematically violated*** state laws requiring that the promotion of pharmaceutical drugs not be false or misleading" (*id.* ¶ 41 (emphasis added)), including through the use of marketing materials, speaker programs, publications, professional societies, and office visits with doctors (*id.* ¶¶ 77, 250).  Thus, while Defendants dispute that they have engaged in any false or misleading act or that Plaintiffs are entitled to any civil penalties, Plaintiffs' allegations have put in controversy more than $75,000.  *See Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1046 n.3 (9th Cir. 2000) (noting that courts may consider statutory damages for purposes of calculating amount in controversy).

12.     Plaintiffs also contend that they are entitled to "restitution of any money acquired by Defendants' false and misleading advertising."  (Am. Compl. ¶ 304; *see also id.* ¶ 308).  While Defendants dispute that Plaintiffs are entitled to any form of restitution, Plaintiffs' allegations alone make clear that the restitutionary amount Plaintiffs seek exceeds $75,000.  For instance, Plaintiffs argue that as a result of deceptive, unlawful marketing by Teva USA, Cephalon, Inc., and Teva Pharmaceutical Industries, Ltd., "sales [of Actiq] exceeded $500 million by 2006." *(Id.* ¶ 190).  Plaintiffs further allege that "[s]ales of Janssen's opioids collectively commanded between $1.3 billion in revenue in 2009 and $1.2 billion in 2012 – a total of $4.7 billion dollars over the four-year period."  (*Id.* ¶ 31).  Plaintiffs allege that "Purdue's national annual sales of OxyContin have fluctuated between $2.47 billion and $2.99 billion" and that the opioids that Endo sells "make up roughly $403 million of Endo's overall revenues."  (*Id.* ¶¶ 26, 32).  Therefore, if only a fraction of such profits are recoverable, as Plaintiffs allege, the amount in controversy for each Defendant exceeds $75,000.

13. Further confirming that the amount in controversy exceeds $75,000, Plaintiffs seek to "treble" the amount of relief awarded by the Court, pursuant to Cal. Civ. Code § 3345. (*Id.* ¶ 311).[1]

14. Lastly, Plaintiffs seek injunctive relief and an order forcing each defendant to "abate the public nuisance" that it allegedly has created in the form of "opioid overuse, abuse, and addiction" (*Id.* ¶¶ 294, 296, 314). For injunctive relief, the amount in controversy is determined "by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Commc'n*, 432 U.S. 333, 347 (1977). If Plaintiffs were to prove their claims, the costs for each defendant to remedy any alleged "opioid overuse, abuse, and addiction" (Am. Compl. ¶ 296) purportedly caused by Defendants likely would exceed $75,000.

15. Therefore, based upon Plaintiffs' allegations alone, each of Plaintiffs' claims have placed well over $75,000 "in controversy."

## 2. There Is Complete Diversity Of Citizenship.

16. It is well-settled that "[t]o determine if diversity jurisdiction exists, courts must examine the citizenship of the real parties to the controversy, not the citizenship of nominal or formal parties." *Cal. v. Universal Syndications, Inc.*, No. C 09-1186, 2009 U.S. Dist. LEXIS 64066, at *4 (N.D. Cal. June 16, 2009), citing *Navarro Savs. Ass'n v. Lee*, 446 U.S. 458, 460-61 (1980).

17. Here, there is complete diversity because: (a) each of the Defendants is a citizen of a State other than California or of a foreign state; and (b) each Plaintiff who is a real party in interest is a citizen of California.

---

[1]  In addition, Plaintiffs also seek "the cost of the suit, including attorneys' fees." (Am. Compl. ¶ 315). Plaintiffs, however, are not authorized to recover attorneys' fees under any of their statutory causes of action. Thus, attorneys' fees here are not counted towards the amount in controversy. *See, e.g.*, *Galt G.S. v. JSS Scandinavia,* 142 F.3d 1150, 1156 (9th Cir. 1998) (identifying rule).

**C.    None Of The Defendants Is A Citizen Of California.**

18.    The citizenship of the parties for removal is determined at the time the action is commenced and when removal takes place.  *See, e.g.*, *Smith v. Sperling*, 354 U.S. 91, 93 n.1 (1957).

19.    For purposes of diversity jurisdiction, a corporation "shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . . ."  28 U.S.C. § 1332(c)(1).  A partnership is a citizen of all of the states of which its partners are citizens.  *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 189 (1990); *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). And "a [limited liability corporation] is a citizen of every state of which its owners/members are citizens."  *Johnson*, 437 F.3d at 899.

20.    Applying these standards, none of the Defendants is a citizen of California:

21.    Defendant Purdue Pharma Inc. is a corporation organized under the laws of New York, with its principal place of business in Connecticut.  (*See* Declaration of Anthony M. Roncalli ("Roncalli Decl.") ¶¶ 2-3).  Thus, it is a citizen of New York and Connecticut.

22.    Defendant The Purdue Frederick Company Inc. is a corporation organized under the laws of New York, with its principal place of business in Connecticut.  (*Id.* at ¶ 10).  Thus, it is a citizen of New York and Connecticut.

23.    Defendant Purdue Pharma L.P. ("PPLP") is a limited partnership organized under the laws of Delaware.  The general partner of PPLP is Purdue Pharma Inc. and the general partnership of PPLP is held 100% by Purdue Holdings L.P. ("PHLP"), a Delaware limited partnership.  (*Id.* ¶ 3).

24.    The general partner of PHLP is Purdue Pharma Inc. and the partnership interest is held 0.2475% by Purdue Pharma Inc., 99.5061% by PLP

Associates Holdings L.P., a Delaware limited partnership ("PLP Assocs."), and 0.2464% by PLP Associates Holdings Inc., a New York corporation with its principal place of business in Connecticut ("PLP Assocs. Holdings").  (*Id.* ¶ 4).

25.    The general partner of PLP Assocs. is PLP Assocs. Holdings, and the partnership interest of PLP Assocs. is held 100% by BR Holdings Associates L.P., a Delaware limited partnership ("BR Holdings").  (*Id.* ¶ 5).

26.    The general partner of BR Holdings is BR Holdings Associates Inc., a New York corporation with its principal place of business in Connecticut, and the partnership interest of BR Holdings is held 50% by Beacon Company, a Delaware general partnership ("Beacon Company") and 50% by Rosebay Medical Company L.P., a Delaware limited partnership ("Rosebay L.P.").  (*Id.* ¶ 6).

27.    The managing general partner of Beacon Company is Stanhope Gate Corp., a British Virgin Islands corporation with its principal place of business in the Jersey, Channel Islands, and the partnership interest of Beacon Company is held 100% by Heatheridge Trust Company Limited, as Trustee of a Jersey, Channel Islands trust.  (*Id.* ¶ 7).  Heatheridge Trust Company Limited is a Jersey, Channel Islands corporation with its principal place of business in Jersey, Channel Islands.  (*Id.* ¶ 7).

28.    The general partner of Rosebay L.P. is Rosebay Medical Company, Inc., a Delaware corporation with its principal place of business in Connecticut ("Rosebay Inc."), and the partnership interest of Rosebay L.P. is held 2% by Rosebay Inc. and 98% by R. Sackler and J. Sackler, as Trustees of a Connecticut trust.  (*Id.* ¶ 8).  R. Sackler is domiciled in and a citizen of the State of Texas and J. Sackler is domiciled in and a citizen of the State of Connecticut.  (*Id.* ¶ 8).

29.    The entities and persons listed above and as described in paragraphs 23 through 28 constitute all entities or persons within the partnership structure of PPLP.  Accordingly, Defendant Purdue Pharma L.P. is a citizen of Delaware, New

York, Connecticut, Texas, the British Virgin Islands, and the Jersey, Channel Islands.

30.     Defendant Teva USA is a corporation organized under the laws of Delaware, with its principal place of business in Pennsylvania.  (Declaration of Jordan Cooper ("Cooper Decl.") ¶ 3).  Thus, it is a citizen of Delaware and Pennsylvania.

31.     Defendant Cephalon, Inc. is a corporation organized under the laws of Delaware, with its principal place of business in Pennsylvania.  (*Id.* ¶ 2).  Thus, it is a citizen of Delaware and Pennsylvania.

32.     Defendant Teva Pharmaceutical Industries Ltd. is a corporation organized under the laws of Israel, with its principal place of business in Israel.  (*Id.* ¶ 4).  Thus, it is a citizen of Israel.

33.     Defendant Johnson & Johnson is a corporation organized under the laws of New Jersey, with its principal place of business in New Jersey. (Declaration of Lacey P. Elberg ("Elberg Decl.") ¶ 3).  Thus, it is a citizen of New Jersey.

34.     Defendant Janssen Pharmaceuticals, Inc. is a corporation organized under the laws of Pennsylvania, with its principal place of business in New Jersey.  (*Id.* ¶ 4).  Thus, Janssen Pharmaceuticals, Inc. is a citizen of Pennsylvania and New Jersey.

35.     Plaintiffs also have named as defendants Ortho-McNeil-Janssen Pharmaceuticals, Inc. and Janssen Pharmaceutical Inc., but Plaintiffs allege, correctly, that those companies are now known as Janssen Pharmaceuticals, Inc. (Am. Compl. ¶ 31).  Ortho-McNeil-Janssen Pharmaceuticals, Inc. and Janssen Pharmaceuticals, Inc. are not separately existing entities, but predecessors of the company now known as Janssen Pharmaceuticals, Inc. and, like the current entity, they were corporations organized under the laws of Pennsylvania, with their principal place of business in New Jersey.  (Elberg Decl. ¶ 5).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

36.     Defendant Endo Health Solutions Inc. is a corporation organized under the laws of Delaware, with its principal place of business in Pennsylvania. (Am. Compl. ¶ 32).  Thus, it is a citizen of Delaware and Pennsylvania.

37.     Defendant Endo Pharmaceuticals Inc. is a corporation organized under the laws of Delaware, with its principal place of business in Pennsylvania. (*Id.*). Thus, it is a citizen of Delaware and Pennsylvania.

38.     Defendant Actavis PLC is a public limited company incorporated under the laws of Ireland with its principal place of business in Ireland. (Declaration of Sheldon V. Hirt ¶¶ 2-3 ). Thus, it is a citizen of Ireland.

39.     Defendant Actavis LLC is a limited liability company organized under the laws of Delaware.  Actavis LLC's sole member is Actavis US Holding LLC, which is a limited liability company organized under the laws of Delaware.  Actavis US Holding LLC's sole member is Watson Laboratories, Inc., which is incorporated under the laws of Nevada and has its principal place of business in Parsippany, New Jersey.  ([First] Declaration of John LaRocca ¶¶ 2-7).  Thus, Actavis LLC is a citizen of Delaware, Nevada, and New Jersey.

40.     Defendant Actavis, Inc., formerly known as Watson Pharmaceuticals, Inc., is incorporated under the laws of Nevada, with its principal place of business in Parsippany, New Jersey.  Thus, Actavis, Inc. is a citizen of Nevada and New Jersey.  ([Second] Declaration of John LaRocca ¶¶ 2-3 ).

41.     Defendant Actavis Pharma, Inc. is a corporation organized under the laws of Delaware, with its principal place of business in New Jersey.  ([Third] Declaration of John LaRocca ¶¶ 2-3 ).  Thus, it is a citizen of Delaware and New Jersey.

42.     Defendant Watson Laboratories ("Watson") is alleged to be a corporation organized under the laws of Nevada, with its principal place of business in California.  (Am. Compl. ¶ 33).  However, that is incorrect.  Since at least the time of the filing of Plaintiffs' Complaint, Watson has been incorporated in Nevada

-9-

and has its principal place of business in Parsippany, New Jersey.  ([Fourth] Declaration of John LaRocca ¶¶ 2-3).  Thus, it is a citizen of Nevada and New Jersey.

43.     Thus, all Defendants are either citizens of a "State" or "foreign State" other than California. 28 U.S.C. § 1332(a)(1)-(2).

**D.     The Plaintiffs Are Citizens Of California.**

44.     The Plaintiffs are Santa Clara County Counsel Orry P. Korb and Orange County District Attorney Tony Rackauckas, who purport to bring this suit on behalf of the People of California.  (Am. Compl. ¶ 23).

45.     For purposes of removal, the Court must look to the real party in interest to determine whether diversity exists.  *Nev. v. Bank of Am. Corp.*, 672 F.3d 661, 670 (9th Cir. 2012).  In this case, the real parties in interest are Santa Clara County and Orange County (the "Counties").

46.     It is well-settled that a county, like Santa Clara County or Orange County, is a citizen of the state in which it is situated for diversity purposes.  *Moor v. Cnty. of Alameda*, 411 U.S. 693, 719-721 (1973).

47.     The determination of who is the real party in interest must be made by evaluating the "essential nature and effect of the proceeding as it appears from the entire record."  *Nevada*, 672 F.3d at 670 (quoting *Dep't of Fair Empl. & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 740 (9th Cir. 2011)).  Neither the caption of the pleading nor the fact that a statute authorizes the State to bring the lawsuit is dispositive in determining whether the State is the real party in interest.  *See Lucent*, 642 F.3d at 739 n.4 (even when statute authorizes state to bring suit, "control alone cannot render California a real party in interest because a state can always bestow upon itself control over virtually any lawsuit via legislation").

48.     In addition, although the State itself is not a plaintiff in this case, as a matter of law, the mere presence of a State as a plaintiff, on its own, will not defeat diversity jurisdiction.  *Lucent*, 642 F.3d at 737.  Instead, a State's presence "will

-10-

defeat jurisdiction under 28 U.S.C. § 1332(a)(1) *only if* 'the relief sought is that which inures *to it alone*, and in its favor the judgment or decree, if for the plaintiff, will effectively operate.'" *Id*. (emphasis added) (quoting and applying *Mo., Kan. & Tex. Ry. Co. v. Mo. Ry & Warehouse Comm'rs*, 183 U.S. 53, 59 (1901)).

49.     Here, the FAL, the UCL, and California's public nuisance statute permit a district attorney or, for some causes of action, a county attorney to bring an action "in the name of the people of the State of California." Cal. Bus. & Prof. Code §§ 17204, 17206, 17535, 17536; Cal. Civ. Proc. Code § 731.  However, although the Amended Complaint purports to be on behalf of "the People of California," it is clear from the "entire record" and controlling Supreme Court and Ninth Circuit law that the real parties in interest are Santa Clara County and Orange County – not the State of California – for at least the following reasons:

50.     *First*, this action is brought by local officials: an elected officer for Orange County and an appointee for Santa Clara County.  This means that the relief sought by the Plaintiffs, if recovered, will flow to or through Orange County and Santa Clara County, not to the treasurer of the State of California or any other counties or subdivisions of the State – and certainly not to the State of California "alone." *Lucent,* 642 F.3d at 731.  By way of example, any civil penalties that are recovered will be remitted only to Orange County.  Both the FAL and UCL expressly provide that if the action is "brought by a district attorney or county counsel, *the entire amount* of penalty collected shall be paid to the treasurer of the county in which the judgment was entered." Cal. Bus. & Prof. Code §§ 17206(c), 17536(c) (emphasis added); *Nw. Pub. Commc'n ex rel. Or. v. Qwest Corp.*, 877 F. Supp. 2d 1004, 1012-13 (D. Or. 2012) (state agency not real party in interest because "[e]ven if civil penalties are available for NPCC to pursue, the relief sought by NPCC largely benefits NPCC and its members and does not inure to the State of Oregon 'alone'").

51.     Likewise, any restitution that Plaintiffs seek under the FAL and the UCL would not go to the State of California, but instead would go to individual consumers, assuming Plaintiffs can prove the elements of the claims.  In fact, Plaintiffs do not allege that the State of California or any state agency has suffered *any* financial harm.  Rather, the alleged financial harm is only to particular "consumers" of opioids, who purportedly "have had to bear the costs of the immediate and foreseeable results of chronic opioid therapy."  (Am. Compl. ¶ 252). Any restitution that is awarded ultimately must be distributed to those citizens and entities who suffered financial harm; it will not go to the State of California itself. *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 950 (Cal. 2002) ("order for restitution is one 'compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken'" (internal citations omitted)); *see also Cal. v. N. Trust Corp.*, No. CV 12-01813, 2013 U.S. Dist. LEXIS 53155, at *10-11 (C.D. Cal. Apr. 10, 2013) (State is not real party in interest for diversity jurisdiction under FAL and UCL when "primary" focus of Complaint is restitution).[2]

52.     Moreover, municipal attorneys only have the power to obtain injunctive relief to abate a public nuisance on behalf of the municipalities they represent.  Thus, for instance, "when a city attorney files suit 'in the name of the people of the State of California' under [Cal. Civ. Proc. Code] § 731, he represents *only the interests of the city he serves*, not the State." *Cal. v. M&P Invs.*, 213 F. Supp. 2d 1208, 1215 (E.D. Cal. 2002) (emphasis added); Cal. Civ. Proc. Code §

---

[2]     Indeed, affected citizens of Orange County and Santa Clara County have the ability to seek restitution themselves – it is not a remedy unique to the State of California.  *Lucent*, 642 F.3d at 739 (equitable remedies did not constitute a substantial state interest "as most of these forms of equitable relief could be obtained by the individual aggrieved"); Cal. Bus. & Prof. Code § 17203 (equitable remedies are available under UCL to any "person who has suffered injury in fact and has lost money or property as a result of the unfair competition"); *id.* § 17535 (same under FAL).

731 (permitting action by "the district attorney or county counsel of any county *in which the nuisance* exists" (emphasis added)); *Cnty. of Santa Clara v. Atl. Richfield Co.*, 137 Cal. App. 4th 292, 305 n.5 (2006) (under public nuisance statute, local government officers are authorized to "seek abatement [ ] only within those communities – not throughout the State of California").  Thus, a city or county seeking to abate a public nuisance "is the real party in interest when suit is brought under [Cal. Civ. Proc. Code] § 731."  *M&P Invs.*, 213 F. Supp. 2d at 1214-15 (citing *People v. City of Los Angeles*, 160 Cal. App. 2d 494 (1958)).

53.     This makes sense, since local officials such as district attorneys and county counsel have limited jurisdictional reach.  By law, a district attorney is an elected county officer and "the exercise of his powers as such is limited territorially to the county for which he has been elected."  *Singh v. Super. Ct.*, 44 Cal. App. 64, 66 (1919); *see also People v. Brophy*, 49 Cal. App. 2d 15, 28 (1942) (district attorneys are not employees or mere agents, but public officers with public duties "delegated and entrusted to them, as agents, the performance of which [duties] is an exercise of a part of the governmental functions *of the particular political unit* for which they, as agents, are active" (emphasis added)).  Likewise, county attorneys, although they are not elected, have the same territorial limitations because they share the same duties.  Cal. Gov't Code  § 27642 ("Whenever the board of supervisors appoints a county counsel pursuant to this chapter, he shall discharge all the duties vested by law in the district attorney other than those of a public prosecutor").[3]

---

[3] Indeed, if an elected or appointed county official could sue on behalf of all other counties throughout California without their consent (or without bringing a class action), this would disturb the balance of power between counties and would grossly exceed the powers of elected or appointed officials who are only charged with representing the citizens in their counties.  *Cf. City of Oakland v. Brock,* 8 Cal. 2d 639, 641 (1937) (governmental subdivision generally "may not exercise its governmental functions beyond its . . . boundaries").

54.     ***Second***, the prosecution of this case is being controlled at a local – not state – level.  Orange County and Santa Clara County, not the State of California, made the decision to file this suit and to hire private counsel to prosecute the action. In fact, for the contingent fee arrangements to have any possibility of remaining valid (and defendants do not concede that they are), it will be the government attorneys for Orange County and Santa Clara County – and not the California Attorney General – who will be required to retain control and supervision over the course and conduct of the case.  *Cnty. of Santa Clara v. Super. Ct.* (*Atl. Richfield Co.*), 50 Cal. 4th 35, 58-59 (2010).  This further confirms that Orange County and Santa Clara County, not the State of California, are the real parties in interest.

55.     ***Finally***, the Counties cannot reasonably be deemed to represent the interests of the entire State of California here because the State, acting through the California Attorney General, previously brought and resolved these claims with respect to the three Purdue Defendants ("Purdue").  (*See People of the State California v. Purdue Pharma L.P., et al.*, San Diego County Superior Court Case No. 37-2007-00066353-CU-PT-CTL, attached to the Declaration of Lisa Gilford ("Gilford Decl.") as Exhibit A).  In May 2007, the Attorney General entered into a Final Judgment with Purdue resolving claims under California's unfair competition law on behalf of the People of California with respect to Purdue's promotional and marketing practices regarding OxyContin.  (*See* Stipulation for Entry of Final Judgment and Final Judgment, attached to the Gilford Decl. as Exhibits B and C). Although Purdue did not admit any liability for the claims, the Final Judgment obligated Purdue to comply with certain Compliance Provisions including:  "In the promotion and marketing of OxyContin, Purdue shall not make any written or oral claim that is false, misleading or deceptive."  (Final Judgment, Gilford Decl. Exhibit C, ¶ 2).  In addition, the Final Judgment provided a dispute resolution mechanism in the event the Attorney General believed that Purdue had violated the terms of the Final Judgment.  (*Id.* ¶¶ 27-32).  The Attorney General has never

asserted that Purdue has violated the terms of the Final Judgment nor triggered the dispute resolution provisions. (Gilford Decl. ¶6).

56.    In a related Stipulation for Entry of Final Judgment, the People of California, through the Attorney General, released Purdue from all claims that could have been asserted under the UCL, FAL, and other state law. (Stipulation, Gilford Decl., Exhibit B, ¶¶ 6-8). In the Stipulation, the Attorney General represented and warranted that he had the power to bind the entire State to all of the terms of the Stipulation and the Final Judgment. (*Id.* ¶ 4). Thus, the State, acting through the California Attorney General, ***has already released*** these claims against three of the defendants to this action and further enforcement on behalf of the People of California related to the claims is subject to a binding dispute resolution procedure. The Counties are well aware of this release, having pleaded the existence of the Stipulation and Final Judgment in their Amended Complaint.[4] (Am. Compl. ¶284). This is further evidence that the Counties, not the State, are acting on their own behalf, and are the real parties in interest here.

57.    Therefore, because Orange County and Santa Clara County are the real parties in interest and are citizens of California, there is complete diversity of citizenship between Plaintiffs and Defendants. *See* 28 U.S.C. § 1332(a).

**E.    Reliance On Cases That Do Not Follow *Lucent* Is Misplaced.**

58.    The Ninth Circuit's holding in *Lucent*, discussed above, sets the standard that courts must follow in determining whether an action is being brought on behalf of the state for diversity jurisdiction purposes. A handful of district court

---

[4] The Counties are subdivisions of the State that encompass citizens of California within their borders and are therefore bound by the Stipulation and Final Judgment. Any claims the Counties assert on their own behalf or purportedly on behalf of citizens of California against Purdue are therefore subject to the defenses of release, *res judicata*, compromise and settlement, accord and satisfaction, and other defenses arising from the Stipulation and the Final Judgment. (*See* Stipulation, Gilford Decl., Exhibit B, ¶ 10 (explicitly preserving these defenses)).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

decisions have addressed some of the issues raised in this Notice and have come to seemingly contrary conclusions.  But those decisions were either decided before *Lucent* or failed to follow the guidelines set forth in *Lucent* and are otherwise readily distinguishable from the present case.  *See N. Trust Corp.*, 2013 U.S. Dist. LEXIS 53155, at *13-15.

59.    For example, in *County of Santa Clara v. Bristol Myers Squibb Co.*, No. 5:12-cv-03256, 2012 U.S. Dist. LEXIS 133405, at *12-16 (N.D. Cal. Sept. 17, 2012), the court found that the action was brought on behalf of the State of California in part because the UCL and the FAL authorize actions to be brought "on behalf of the People of the State of California."  However, the court erroneously relied on pre-*Lucent* decisions, did not itself employ the *Lucent* analysis, and improperly focused solely on the issue of ***whether*** the city attorney could bring an action on behalf of the State.  The court did not consider the fact that any civil penalties (and presumably any other damages) awarded to the plaintiffs would flow to the City and County only, not to the State.

60.    In *California v. Smartwear Techs.*, No. 11cv01361, 2012 U.S. Dist. LEXIS 8342, at *6 (S.D. Cal. Jan. 25, 2012), the court held that "[u]nder California law, the People of the State of California is the state" and the California Corporations Commissioner "is authorized to bring an action under California's Corporate Securities law in the name of the People of the State of California."  *Id.* The court further held that the State has an interest "in securing an honest marketplace" and the civil penalties sought are "punitive and serve a public interest in preventing future fraudulent schemes which further demonstrates the state's substantial interest in the action."  *Id.* at *7.  Notably, the court did not engage in the necessary *Lucent* analysis in reaching its decision.  Moreover, the court was considering a completely different statutory scheme and did not consider to whom any penalties or other damages would be paid.

61.     In *California v. Universal Syndications, Inc.*, No. C 09-1186, 2009 U.S. Dist. LEXIS 64066 (N.D. Cal. June 16, 2009), and *California v. Time Warner, Inc.*, No. CV 08-4446, 2008 U.S. Dist. LEXIS 109387 (C.D. Cal. Sept. 17, 2008), the courts found that because any recovered funds would be for the exclusive use by the Attorney General, the district attorney, the county counsel, and the city attorney for the enforcement of California's consumer protection laws, "the State of California has made it an interest of the State to enforce compliance with consumer protection laws." *Time Warner*, 2008 U.S. Dist. LEXIS 109387, at *7; *Universal Syndications*, 2009 U.S. Dist. LEXIS 64066, at *17 (same, quoting *Time Warner*). However, these cases are distinguishable in at least two ways.  First, they were decided pre-*Lucent* and did not follow *Lucent*'s controlling analysis; indeed, they both cited and relied on out-of-circuit district court decisions that *Lucent* expressly disapproved.[5]  Second, the courts misinterpreted the plain language of the statute in that the statute does not expressly allow for the State to use funds paid to the County "for the enforcement of consumer protections laws;" rather, all civil penalties awarded to the County in an action brought by the District Attorney are paid directly and only to the County to be used by the County.  *See* Cal. Bus. & Prof. Code § 17206(c).

62.     In *California v. Check 'n Go of California, Inc.*, No. C 07-02789, 2007 U.S. Dist. LEXIS 65650, at *15 (N.D. Cal. Aug. 20, 2007), the court found no diversity jurisdiction where the City Attorney of San Francisco brought an action on behalf of the People of California, claiming Check 'N Go had engaged in deceptive business practices.  This case was decided before *Lucent* and did not employ the appropriate analysis.  In addition, like the court in *Bristol*, the court focused only on the issue of whether the city attorney could bring an action on

---

[5] *See Lucent*, 642 F.3d at 737 n.2 (disapproving *Wis. v. Abbott Labs.*, 341 F. Supp. 2d 1057 (W.D. Wis. 2004), and *W. Va. v. Morgan Stanley & Co.*, 747 F. Supp. 332 (S.D. W.Va. 1990)).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

behalf of the State, and also failed to consider that any award would flow to the City and County, and not to the State.

63.     Finally, in *California v. Steelcase Inc.*, 792 F. Supp. 84, 85 (C.D. Cal. 1992), another pre-*Lucent* decision, the court again focused only on whether the Los Angeles City Attorney could bring an action on behalf of the State and failed to consider to whom any damages or penalties would be paid.

64.     All of these cases fail to employ the analysis required by *Lucent* (and *Missouri Railway*) and, as a result, ignore many of the factors that a court must consider when determining diversity jurisdiction.  Accordingly, theses case should not be afforded weight of authority.

**F.     <u>Removal Is Timely</u>**

65.     Teva USA has filed this Notice of Removal within thirty (30) days of receipt of the Amended Complaint, which names Teva USA as a Defendant for the first time.  *See* 28 U.S.C. § 1446(b).  The fact that some of the other defendants were served more than 30 days before the date of this Notice does not affect either timeliness of Teva USA's removal or the ability of earlier-served defendants to consent to it.  *See* 28 U.S.C. § 1446(c); *Destfino v. Reiswig*, 630 F.3d 952, 956 (9th Cir. 2011).  Thus, removal by Teva USA is timely.

**G.     <u>Consent.</u>**

66.     For purposes of removal for complete diversity jurisdiction under 28 U.S.C. § 1332(a) and pursuant to 28 U.S.C. § 1441(b), all Defendants who have been properly joined and served must consent to the removal of the State Court Action.

67.     Defendants Cephalon, Inc., Purdue Pharma L.P., Purdue Pharma, Inc., the Purdue Frederick Company, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutical Inc. n/k/a Janssen Pharmaceuticals, Inc., Endo Health Solutions Inc., Endo Pharmaceuticals Inc., Actavis, Inc., Watson Pharmaceuticals,

Inc. n/k/a Actavis, Inc., Watson Laboratories, Inc., Actavis LLC, and Actavis Pharma, Inc. f/k/a Watson Pharma, Inc. consent to the removal of this action. *See, e.g.*, *Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1225 (9th Cir. 2009) ("One defendant's timely removal notice containing an averment of the other defendants' consent and signed by an attorney of record is sufficient").

68.     The remaining Defendants, Teva Pharmaceutical Industries Ltd. and Actavis PLC, are foreign companies which have not yet been served in this action. Thus, because they have not yet been "properly served," their consent is not required. *See* 28 U.S.C. § 1446(b)(2)(A); *see also Salveson v. Western States Bankcard Ass'n*, 731 F.2d 1423, 1429 (9th Cir. 1984) (noting that "a party not served need not be joined" in a petition for removal).  Nonetheless, they consent to removal.

**H.     Service.**

69.     Pursuant to 28 U.S.C. § 1446(d), Teva USA is providing a copy of this Notice of Removal to Plaintiffs' counsel and filing a copy with the Clerk of Court in the State Court Action.

70.     By filing this Notice of Removal, Defendants do not waive any defenses that may be available to them and reserve all such defenses.  If any question arises as to the propriety of the removal of the State Court Action to this Court, Teva USA and all other Defendants request the opportunity to present both a brief and oral argument in support of their position that this case has been properly removed.

///

///

I.      **Conclusion.**

WHEREFORE, Defendant Teva USA hereby removes this action from the Orange County Superior Court to the United States District Court for the Central District of California.


DATED:   July 11, 2014          MORGAN, LEWIS & BOCKIUS LLP



                                By:  /s/ Collie F. James IV
                                     Collie F. James IV
                                     Attorney for Defendants
                                     TEVA PHARMACEUTICALS USA, INC.,
                                     AND CEPHALON, INC.